1  KAREN P. HEWITT
United States Attorney
2  CAROLINE P. HAN
Assistant U.S. Attorney
3  California State Bar No. 250301
United States Attorney's Office
4  880 Front Street, Room 6293
San Diego, California 92101-8893
5  Phone: (619) 557-5220
Fax: (619) 235-2757
6  E-mail: caroline.han@usdoj.gov

7  Attorneys for Plaintiff
United States of America

8

9                    UNITED STATES DISTRICT COURT

10                 SOUTHERN DISTRICT OF CALIFORNIA

11

12  UNITED STATES OF AMERICA,        )  Criminal Case No. 08CR2428-JAH
                                     )
13              Plaintiff,           )  **RESPONSE AND OPPOSITION TO**
                                     )  **DEFENDANT'S MOTIONS:**
14         v.                        )
                                     )  **(1) TO SUPPRESS STATEMENTS**
15                                   )  **(2) TO SUPPRESS THE VEHICLE STOP**
                                     )  **(3) TO COMPEL SPECIFIC DISCOVERY**
16  VINCENT MANUEL AGUIRRE,          )  **(4) FOR SEARCH AND DISCLOSURE OF**
                                     )      **ELECTRONIC SURVEILLANCE**
17              Defendant.           )  **(5) TO REVEAL INFORMATION REGARDING**
                                     )      **GOVERNMENT WITNESSES**
18                                   )
                                     )  Date:    August 25, 2008
19  _____ )  Time:    8:30 a.m.
                                     )  Court:   The Hon. John A. Houston
20

21         COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel,

22  United States Attorney, Karen P. Hewitt, and Assistant U.S. Attorney Caroline P. Han, and hereby

23  files its Response and Opposition to Defendant's Motions to Suppress Statements, Suppress

24  Vehicle Stop, Compel Specific Discovery, For Search and Disclosure of Electronic Surveillance,

25  To Reveal Information Regarding Government Witnesses, and For Leave to File Further Motions.

26  This Response and Opposition is based upon the files and records of this case, together with the

27  attached Statement of Facts and Memorandum of Points and Authorities.

    //
28
    //

# I

## STATEMENT OF FACTS

On June 25, 2008 at approximately 5:00n pm, the defendant attempted to leave the United States and enter Mexico through Calexico West Port of Entry as the driver and sole visible occupant of a 1999 Cadillac El Dorado. When the defendant approached primary inspection, he asked, "What is the problem," and provided Customs and Border Protection (CBP) Inspector Osuna with his U.S. passport as identification. CBP Inspector Osuna asked the defendant three separate times while reviewing the defendant's identification documentation if the defendant was carrying more than $10,000 of U.S. Currency. The defendant replied that he had $400.00 in U.S. Currency. CBP Inspector Osuna also asked additional biographical questions of the defendant, and the defendant replied that the vehicle belonged to him, that he had seen his daughter at a hospital in Indio, and was en route to Mexicali to visit his relatives. A narcotics detector dog also alerted to the rear of the vehicle during primary inspection.

Thereafter, the defendant's vehicle was referred for secondary inspection. In secondary inspection, the defendant was patted down. In addition, he again gave a negative customs declaration, stated that the car belonged to him and that he was going to Mexicali to visit relatives. In addition, during secondary inspection, a narcotics detector dog alerted to the rear seat of the vehicle. Thereafter, CBP Officer Jones pulled the rear seat back and discovered a non-factory compartment behind the back seat. Ultimately, officers found 23 packages containing United States Currency in the amount of approximately $273,940. The packages were found in the backseat backrest. Thereafter, the defendant was placed under arrest.

The defendant was advised of his Miranda rights at approximately 9:32 pm. The defendant stated that he understood his rights, and agreed to waive those rights. The defendant stated that he had met a man named Jose Angel Garcia in a bar who over time, had convinced him to drive a vehicle from the United States into Mexico on his behalf. The defendant added that the man had given him money to purchase a vehicle, and that the defendant had registered the vehicle himself. He had been instructed to drive the vehicle into Mexicali. The defendant stated that he imagined that was transporting money or weapons, and that he was to be paid $500.00 for driving the vehicle

south.  He further stated that he was not sure, and believed that the money could be from drug trafficking.  He further stated that he knew the U.S. Currency reporting requirements when transporting money across the border.  He added that the day before, Jose Garcia had picked up his vehicle, and that the defendant was to drive the car on the day he was apprehended from Indio to Mexicali.

## II

## MOTION TO COMPEL SPECIFIC DISCOVERY AND PRESERVE EVIDENCE

To date, the Government has provided the defendant with all relevant discovery at this time, and we will continue to comply with our discovery obligations.

With respect to the defendant's discovery motions, the Constitution requires the Government to preserve evidence "that might be expected to play a significant role in the suspect's defense." California v. Trombetta, 467 U.S. 479, 488 (1984).  To require preservation by the Government, such evidence must (1) "possess an exculpatory value that was apparent before the evidence was destroyed," and (2) "be of such a nature that the Defendant would be unable to obtain comparable evidence by other reasonably available means."  Id. at 489; see also Cooper v. Calderon, 255 F.3d 1104, 1113-14 (9th Cir. 2001).   The Government will make every effort to preserve evidence it deems to be relevant and material to this case.  Any failure to gather and preserve evidence, however, would not violate due process absent bad faith by the Government that results in actual prejudice to the Defendant.  See Illinois v. Fisher, 540 U.S. 544 (2004) (per curiam); Arizona v. Youngblood, 488 U.S. 51, 57-58 (1988); United States v. Rivera-Relle, 322 F.3d 670 (9th Cir. 2003); Downs v. Hoyt, 232 F.3d 1031, 1037-38 (9th Cir. 2000).

**(1)** **Defendant's Statements** – The Government recognizes its obligation, under Rules 16(a)(1)(A) and 16(a)(1)(B), to provide to the defendant the substance of the defendant's oral statements and defendant's written statements.  (Unless otherwise noted, all references to "Rules" refers to the Federal Rules of Criminal Procedure.)  The Government has produced all

1   of the defendant's statements that are known to the undersigned Assistant U.S. Attorney at this

2   date.  If the Government discovers additional oral or written statements that require disclosure

3   under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be promptly provided to

4   Defendant.

5        (**2**)  **Arrest Reports, Notes, and Dispatch Tapes** –  The Government has provided the

6   defendant with all known reports related to the defendant's arrest in this case.  The Government

7   is not aware of the existence of any dispatch tapes relevant to this case.  The Government will

8   continue to comply with its obligation to provide to the defendant all reports subject to Rule 16.

9        The Government has no objection to the preservation of the agents' handwritten notes.

10  See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their

11  original notes of interviews of an accused or prospective government witnesses).  However, the

12  Government objects to providing the defendant with a copy of the rough notes at this time.  The

13  Government is not required to produce the notes pursuant to the Jencks Act because the notes

14  do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise

15  both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or

16  adopted by the witness.  United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980).  The

17  notes are not Brady material because, as discussed further, the notes do not present any

18  material exculpatory information or any evidence favorable to the defendant that is material to

19  guilt or punishment.  If, during a future evidentiary hearing, certain rough notes become

20  particularly relevant, the notes in question will be made available to the defendant.

21       (**3**)  **Evidence Seized** – The Government has complied and will continue to comply

22  with Rule 16(a)(1)(E) in allowing the defendant an opportunity, upon reasonable notice, to

23  examine, inspect, and copy all evidence seized that is within its possession, custody, or control,

24  and that is either material to the preparation of the defendant's defense, or is intended for use

25  by the Government as evidence during its case-in-chief at trial, or was obtained from or

26  belongs to the defendant.

27       (**4**)  **Tangible Objects** – The Government has complied and will continue to comply

28  with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to

1    examine, inspect, and copy tangible objects that are within its possession, custody, or control,

2    and that is either material to the preparation of the defendant's defenses, or is intended for use

3    by the Government as evidence during its case-in-chief at trial, or was obtained from or

4    belongs to the defendant.  The Government need not, however, produce rebuttal evidence in

5    advance of trial.  United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

6        **(5) Report of Scientific Tests or Examinations** – The Government is not aware of any

7    scientific tests or examinations that have been conducted in relation to this case.  Should any be

8    conducted, the Government will provide Defendant with any further scientific tests or

9    examinations.

10       **(6) Witness Names**– The Government has provided the defendant with the names of

11   the law enforcement agents involved in the defendant's case.  However, the witnesses that the

12   Government will use at trial will be provided to the defendant prior to trial in sufficient time for

13   the defendant to prepare for trial.  Absent a specific showing by the defendant, the Government

14   objects to providing the defendant with all of the names of its witnesses at this time as the

15   investigation of this case is ongoing.

16       **(7) Statements of Witnesses**– The defendant has requested the statements of

17   Government witnesses who will be called to trial.  Rule 26.2 incorporates the Jencks Act, 18

18   U.S.C. §3500, into the Federal Rules of Criminal Procedure.  The Jencks Act requires that,

19   after a Government witness has testified on direct examination, the Government must give the

20   Defendant any "statement" (as defined by the Jencks Act) in the Government's possession that

21   was made by the witness relating to the subject matter to which the witness testified. 18 U.S.C.

22   §3500(b).  For purposes of the Jencks Act, a "statement" is (1) a written statement made by the

23   witness and signed or otherwise adopted or approved by her, (2) a substantially verbatim,

24   contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by

25   the witness before a grand jury. 18 U.S.C. §3500(e).   If notes are read back to a witness to see

26   whether or not the government agent correctly understood what the witness was saying, that act

27   constitutes "adoption by the witness" for purposes of the Jencks Act. United States v. Boshell,

28   952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)).

**(8) Grand Jury Testimony**–The defendant has moved for the disclosure of the grand jury minutes, and even acknowledges that defendants need to cite a particularized need for a court to order disclosure of the grand jury minutes. However, in this case, the defendant has failed to make any such particularized need. That is because no such need exists in this case. For these reasons, the defendant's motion should be denied.

**(9) Informants and Cooperating Witnesses** – The defendant has moved for disclosure of any informants involved in this case, as well as communications between agents and informants, bias by informants, promises made to informants, and numerous other requests about any confidential informants involved in this case. At this time, the Government is unaware of a confidential source or informant involved in this case. The Government must generally disclose the identity of informants where (1) the informant is a material witness, or (2) the informant's testimony is crucial to the defense. Roviaro v. United States, 353 U.S. 53, 59 (1957). If there is a confidential informant involved in this case, the Court may, in some circumstances, be required to conduct an in-chambers inspection to determine whether disclosure of the informant's identity is required under Roviaro. See United States v. Ramirez-Rangel, 103 F.3d 1501, 1508 (9th Cir. 1997). Should the Government become aware of an information or confidential source being involved in this case, we will make it known to the defendant.

**(10) 404(b) Evidence** – The Government will disclose in advance of trial the general nature of any "other bad acts" evidence that the United States intends to introduce at trial pursuant to Fed. R. Evid. 404(b). Evidence should not be treated as "other bad acts" evidence under Fed. R. Evid. 404(b) when the evidence concerning the other bad acts and the evidence concerning the crime charged are "inextricably intertwined." See United States v. Soliman, 812 F.2d 277, 279 (9th Cir. 1987).

**(10) Evidence of Bias or Motive to Lie** – The Government recognizes its obligation under Brady and Giglio to provide evidence that could be used to impeach Government witnesses including material information regarding demonstrable bias or motive to lie.

    (11)  **Impeachment Evidence** – As previously discussed, the Government recognizes its obligation under <u>Brady</u> and <u>Giglio</u> to provide material evidence that could be used to impeach Government witnesses.

    (12)  **Evidence of Criminal Investigation of Any Government Witness** – As noted above, the Government objects to providing any evidence that a prospective witness is under criminal investigation, but will provide the conviction record, if any, which could be used to impeach all witnesses the Government intends to call in its case-in-chief.

    (13)  **Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling** – The Government recognizes its obligation under <u>Brady</u> and <u>Giglio</u> to provide material evidence that could be used to impeach Government witnesses including material information related to perception, recollection, ability to communicate, or truth telling.  The Government strenuously objects to providing any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic because such information is not discoverable under Rule 16, <u>Brady</u>, <u>Giglio</u>, <u>Henthorn</u>, or any other Constitutional or statutory disclosure provision.

    (14)  **Personnel Records of Government Officers Involved in the Arrest** – The Government objects to Defendant's request that the Government reveal all citizen complaints, and internal affair inquiries into the inspectors, officers, and special agents who were involved in this case – regardless of whether the complaints or inquiries are baseless or material and regardless of whether the Government intends to call inspectors, officers, and special agents to testify.  As previously noted, the Government will comply with <u>Henthorn</u> and disclose to Defendant all material incriminating information regarding the testifying Government inspectors, officers, and special agents.

    (15)  **Co-Conspirator Statements** –The defendant has moved for statements made by both unindicted and indicted co-conspirators, and has made a number of other requests regarding information relating to indicted and unindicted co-conspirators.  The defendant is the sole defendant indicted under the above described case, and thus has no indicted co-conspirators at this time.  Moreover, the defendant has not been specific about who his

uninducted co-conspirators may be, and thus the people to whom the defendant refers is unclear to the Government. In any event, should the defendant have unindicted co-conspirators who he wishes to disclose to the United States, and should he be able to make a showing how these various requests about those people are discoverable under Rule 16 or any other applicable law, then, and not until then, should this Court entertain this motion. Until then, the defendant's motion should be denied.

**(16) Search Warrants**–The defendant has moved for disclosure of affidavits and search warrants which resulted in evidence that the Government will use against the defendant in its case in chief. The Government is not aware of any search warrant that has been executed in connection with the defendant's case. Should the Government become aware of any such search warrant, we will either disclose the affidavit and search warrant, or seek a protective order from the Court if necessary.

**(17) Subscriber Information for Telephone, Cell Phones, and Push to Talk Devices**--

The defendant has moved for disclosure of subscriber information for telephones, cell phones, and push to talk devices that have been searched, intercepted, or seized in connection with the defendant's case. The Government is not required to obtain this information on the defendant's behalf, nor is that information discoverable. Moreover, the defendant's request is too broad for it to be clear what exactly he seeks. As such, the defendant's motion should be denied.

**(18) Title or Leaseholds On All Premises and Vehicles Searched**—The defendant has moved for disclosure of subscriber information for titles and leaseholds of all premises and vehicle searched in connection with the defendant's case. The Government is not required to obtain this information on the defendant's behalf, nor is that information discoverable. Moreover, the defendant's request is too broad for it to be clear what exactly he seeks. As such, the defendant's motion should be denied.

**(19) Brady Material** – The Government has and will continue to perform its duty under Brady v. Maryland, 373 U.S. 83 (1963) to disclose material exculpatory information or evidence favorable to the defendant when such evidence is material to guilt or punishment.

1    The Government recognizes that its obligation under <u>Brady</u> covers not only exculpatory

2    evidence, but also evidence that could be used to impeach witnesses who testify on behalf of

3    the United States.  <u>See</u> <u>Giglio v. United States</u>, 405 U.S. 150, 154 (1972); <u>United States v.</u>

4    <u>Bagley</u>, 473 U.S. 667, 676-77 (1985).  This obligation also extends to evidence that was not

5    requested by the defense.  <u>Bagley</u>, 473 U.S.  at 682; <u>United States v. Agurs</u>, 427 U.S. 97,

6    107-10 (1976).  "Evidence is material, and must be disclosed (pursuant to <u>Brady</u>), 'if there is a

7    reasonable probability that, had the evidence been disclosed to the defense, the result of the

8    proceeding would have been different.'" <u>Carriger v. Stewart</u>, 132 F.3d 463, 479 (9th Cir. 1997)

9    (<u>en banc</u>).  The final determination of materiality is based on the "suppressed evidence

10   considered collectively, not item by item."  <u>Kyles v. Whitley</u>, 514 U.S. 419, 436-37 (1995).

11           <u>Brady</u> does not, however, mandate that the Government open all of its files for

12   discovery.  <u>See</u> <u>United States v. Henke</u>, 222 F.3d 633, 642-44 (9th Cir. 2000) (<u>per curiam</u>).

13   Under <u>Brady</u>, the United States is not required to provide: (1) neutral, irrelevant, speculative, or

14   inculpatory evidence (<u>see</u> <u>United States v. Smith</u>, 282 F.3d 758, 770 (9th Cir. 2002)); (2)

15   evidence available to the defendant from other sources (<u>see</u> <u>United States v. Bracy</u>, 67 F.3d

16   1421, 1428-29 (9th Cir. 1995)); (3) evidence that the defendant already possesses (<u>see</u> <u>United</u>

17   <u>States v. Mikaelian</u>, 168 F.3d 380-389-90 (9th Cir. 1999) <u>amended by</u> 180 F.3d 1091 (9th Cir.

18   1999)); or (4) evidence that the undersigned Assistant U.S. Attorney could not reasonably be

19   imputed to have knowledge or control over.  <u>See</u> <u>United States v. Hanson</u>, 262 F.3d 1217,

20   1234-35 (11th Cir. 2001).     <u>Brady</u> does not require the United States "to create exculpatory

21   evidence that does not exist," <u>United States v. Sukumolahan</u>, 610 F.2d 685, 687 (9th Cir. 1980),

22   but only requires that the Government "supply the defendant with exculpatory information of

23   which it is aware."  <u>United States v. Flores</u>, 540 F.2d 432, 438 (9th Cir. 1976).

24           **(20)**  <u>**Defendant's Prior Record**</u> – The Government has provided the defendant with a

25   copy of his known prior criminal record and, consequently, has fulfilled its duty of discovery

26   under Rule 16(a)(1)(D).  <u>See</u> <u>United States v. Audelo-Sanchez</u>, 923 F.2d 129 (9th Cir. 1990).

27   To the extent that the Government determines that there are any additional documents

28

1  reflecting the defendant's prior criminal record, the Government will provide those to the

2  defendant.

3      **(21)**  <u>**Residual Request**</u> – The Government has already complied with the defendant's

4  residual request for prompt compliance with the defendant's discovery requests.

6                                  **III**

7              <u>**DEFENDANT'S MOTION FOR SEARCH**</u>

8        <u>**AND DISCLOSURE OF ELECTRONIC SURVEILLANCE**</u>

9      The defendant has moved for the disclosure of multiple forms of wiretap evidence by

10  the Government to the defendant.

11      A person has standing to challenge a wiretap under 18 U.S.C. 2518(10)(a) when they

12  are an aggrieved person who was unlawfully intercepted on a wiretap "or the order of

13  authorization or approval under which it was intercepted is insufficient on its face." 18 U.S.C.

14  2518(10)(a).  The statute defines an aggrieved person as "a party to any intercepted wire, oral,

15  or electronic communication or a person against w home the interception was directed." 18

16  U.S.C. 2510(11). In addition, aggrieved people have been further defined as people whose

17  Fourth Amendment rights have been violated by interception. <u>United States</u> v. <u>Chavez-Chavez</u>,

18  2008 WL 1847229 (S.D.Cal. 2008, Hon. William Q. Hayes) (citing <u>Alderman</u> v. <u>United States</u>,

19  394 U.S. 165, 176, n.9 (1969)).  Within this framework, the Ninth Circuit has found that only

20  those people who have been participants in intercepted conversations or if conversations have

21  occurred in a location where they had a legitimate expectation of privacy, only those people

22  have standing to challenge wiretaps or the fruits of wiretaps. Id. (citing United <u>States</u> v. <u>King</u>,

23  478 F.2d 494, 506 (9th Cir. 1973)).

24      In the defendant's motion, he states that defense counsel was informed that "the stop of

25  defendant's vehicle going in the general direction of the United States-Mexico border was

26  based on a wiretap," and that he was informed of that information by a Government attorney

27  during the pre-indictment phase.  He further adds that the Government now refuses to confirm

28  the existence of a wiretap.  In addition, defense counsel has filed a declaration in which he

1    states that an Assistant U.S. Attorney (not the undersigned) told him "that the reason Mr.

2    Aguirre was stopped in his vehicle on his way from the United States into the Republic of

3    Mexico was that he (Mr. Aguirre) was involved in a wiretap in the United States." As

4    discussed above, in order for the defendant to have standing to challenge a wiretap, he must be

5    a person who has been intercepted or have a legitimate expectation of privacy where the

6    interception took place. The defendant has not made that showing, and thus does not have

7    standing to challenge any wiretap. If the defendant cannot make this basic showing of

8    standing, he also cannot make a basic showing, supported by legal principles, that any such

9    information is discoverable to him under any legal theory. For these reasons, the defendant's

10    motion should be denied.

11                                    **IV**

12              **DEFENDANT'S MOTION TO SUPPRESS VEHICLE STOP**

13              The defendant has moved to suppress the stop of his vehicle as being unlawful. The

14    defendant has argued that agents needed reasonable suspicion in order to stop his vehicle.

15    Without that, he argues, the stop was illegal and any evidence and/or statements derived from

16    the stop should be suppressed.

17              While it is ordinarily true agents require adequate justification to stop a vehicle and

18    detain a defendant, there are exceptions to this rule. One of those exceptions is for a border

19    search. The Ninth Circuit has found that where a border search occurs, a person who is exiting

20    the United States may be stopped and searched without any requirement of probable cause or

21    reasonable suspicion. United States v. Stanley, 545 F.2d 661 (9th Cir. 1976). In Stanley, the

22    defendant was operating a boat which was on its way from the United States into Mexico when

23    it was stopped, which lead to the detection of marijuana and the defendant's arrest. In

24    discussing incoming and outgoing border searches, the Ninth Circuit noted that both share

25    certain features like protecting U.S. Citizens' interests, the likelihood of smuggling attempts at

26    the border, drug smuggling detection is difficult, and that people are on notice that their privacy

27    may be invaded when crossing the border. Id at 667. Moreover, the Court has found that

28

1   defendants leaving the United States from an airport may be stopped and searched pursuant to

2   border search principles.  See United States v. Duncan, 693 F. 2d 971, 977-978 (9th Cir.  1982).

3       Here in this case, it is clear that the defendant was at the border about to enter Mexico

4   when he was stopped by CBP inspectors.  As such, they were not required to possess probable

5   cause or reasonable suspicion when they stopped the defendant's vehicle.  Once they did stop

6   the defendant's vehicle, the inquiry of the defendant and the scope of the search of the vehicle

7   was reasonable in light of the border search and subsequent alert by the narcotics detector dog.

8   As such, the stop of the vehicle and the subsequent search of the vehicle were lawful.  For all of

9   those reasons, the defendant's motion to suppress the vehicle stop should be denied.

10                          **V**

11              **DEFENDANT'S MOTION TO SUPPRESS STATEMENTS**

12      Defendant moves this Court for an order suppressing any statements because they were

13  allegedly made as a result of an invalid waiver of his rights pursuant to Miranda v. Arizona,

14  384 U.S. 436 (1966).  Because the defendant's motion is unclear, it appears that the defendant

15  has moved to suppress the statements that the defendant made during primary and secondary

16  inspection when he was not in custody, as well as the statements he made after he was arrested

17  and advised of his Miranda rights.  As explained further below, the United States does not

18  believe that a suppression hearing is necessary to prove admissibility; however, if the Court

19  chooses to hold an evidentiary hearing on Defendant's motion, the United States will prove that

20  Defendant's statements during primary and secondary inspection were voluntary, Defendant

21  was not subject to custodial interrogation, and the statements are, therefore, admissible.  As to

22  the statements that the defendant made while he was in custody, they were made after he was

23  properly advised of his Miranda rights and he agreed to waive those rights.  Moreover, any

24  evidence derived from Defendant's statements should not be suppressed because the evidence

25  was properly obtained without any due process violation.

26      **1. Deny Motion Because Defendant Failed To Comply With The Local Rules**

27      This Court can and should deny Defendant's motion without a suppression hearing.

28  Under Ninth Circuit and Southern District precedent, as well as Southern District Local

1    Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to

2    suppress only when the defendant adduces specific facts sufficient to require the granting of the

3    defendant's motion. See United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) ("[T]he

4    defendant, in his motion to suppress, failed to dispute any material fact in the government's

5    proffer. In these circumstances, the district court was not required to hold an evidentiary

6    hearing."); United States v. Wardlow, 951 F.2d 1115 (9th Cir. 1991) (defendant forfeited right

7    to evidentiary hearing on motion to suppress by not properly submitting declaration pursuant to

8    similar local rule in Central District of California); United States v. Moran- Garcia, 783 F.

9    Supp. 1266, 1274 (S.D. Cal. 1991) (stating that boilerplate motion containing indefinite and

10    unsworn allegations was insufficient to require evidentiary hearing on defendant's motion to

11    suppress statements); Crim. L.R. 47.1g(1) (stating that "[c]riminal motions requiring predicate

12    factual finding shall be supported by declaration(s). . . . The Court need not grant an

13    evidentiary hearing where either party fails to properly support its motion for opposition.").

14    　　　Here, Defendant has failed to support his allegations with a declaration, in clear

15    violation of Criminal Local Rule 47.1(g). Moreover, Defendant's brief allegations fail to

16    establish a Miranda violation, clearly making it unnecessary to hold an evidentiary hearing in

17    this case. Cf. United States v. Howell, 231 F.3d 616, 620 (9th Cir. 2000) ("An evidentiary

18    hearing on a motion to suppress need be held only when the moving papers allege facts with

19    sufficient definiteness, clarity, and specificity to enable the trial court to conclude that

20    contested issues of fact exist." (citation omitted).  Defendant's motion to suppress statements

21    should be denied.

22    　　　　　**2. Defendant Was Not In Custody During Primary and Secondary Inspections**

23    　　　When a person has been deprived of his or her freedom of action in a significant way,

24    Government agents must administer Miranda warnings prior to questioning the person.

25    Miranda v. Arizona, 384 U.S. 436 (1966). Such a requirement thus has two components: (1)

26    custody, and (2) interrogation. Id. at 477-78. Whether a person is in custody is measured by an

27    objective standard. Berkemer v. McCarty, 468 U.S. 420, 442 (1984). A court must examine the

28    totality of circumstances and determine "whether a reasonable innocent person in such

1    circumstances would conclude that after brief questioning he or she would not be free to

2    leave." <u>United States</u> v. <u>Booth,</u> 669 F.3d 1231, 1235 (9th Cir. 1981); see also <u>United States</u> v.

3    <u>Beraun-Perez</u>, 812 F.2d 578, 580 (9th Cir. 1980). Factors relevant to this determination are "1)

4    the language used to summon the individual; 2) the extent to which the defendant is confronted

5    with evidence of guilt; 3) the physical surroundings of the interrogation; 4) the duration of the

6    detention; and 5) the degree of pressure applied to detain the individual." Id. (citation omitted).

7         The Supreme Court held that in the "general interest of effective crime prevention and

8    detection...a police officer may in appropriate circumstances and in an appropriate manner

9    approach a person for purposes of investigating possible criminal behavior even though there is

10   no probable cause to make an arrest." <u>Terry</u> v. <u>Ohio</u>, 392 U.S. 1, 22 (1968). This authorized

11   investigatory detention or stop falls short of custody when a Border Patrol agent does not have

12   enough information to execute an arrest, and must investigate further through brief, routine

13   questioning about citizenship and immigration status. See <u>United States</u> v. <u>Brignoni-Ponce</u>, 422

14   U.S. 873, 878-88 (1975); <u>United States</u> v. <u>Galindo-Gallegos</u>, 244 F.3d 728, 731-32 (9th Cir.),

15   modified by 255 F.3d 1154 (9th Cir. 2001).

16        The case of <u>Florida</u> v. <u>Royer</u>, 460 U.S. 491 (1983), is instructive. In <u>Royer</u>, two police

17   detectives at the Miami International Airport were observing Royer and thought he fit a "drug

18   courier profile." As Royer walked over to the airline boarding area, the two detectives

19   approached him, identified themselves as police officers, and asked if Royer had a "moment" to

20   speak with time. Royer said, "Yes." Id. at 493-494. Upon request, Royer produced his airline

21   ticket and his driver's license. When asked why the ticket was in the name of "Holt," instead of

22   the name "Royer," as on his license, Royer said a friend had made the reservation in the other

23   name. Royer was noticeably more nervous during this conversation, whereupon the detectives

24   told him they were narcotics investigators and that they suspected him of transporting

25   narcotics. Id. at 494. The detectives then asked Royer to accompany them to a room 40 feet

26   away, but kept his ticket and identification. Royer said nothing, but went with them. Id.

27        In deciding the case, the Supreme Court noted:

28        [L]aw enforcement officers do not violate the Fourth Amendment by merely

1       approaching an individual on the street or in another public place, by asking him

2       if he is willing to answer some questions, by putting questions to him if the person

3       is willing to listen, or by offering in evidence in a criminal prosecution his

4       voluntary answers to such questions. (Citations omitted). Nor would the fact that

5       the officer identifies himself as a police officer, without more, convert the

6       encounter into a seizure requiring some level of objective justification. United

7       States v. Mendenhall, 446 U.S. 544, 555, 100 S. Ct. 1870, 1877, 64 L. Ed.2d 497

8       (1980) (opinion of Stewart, J.). The person approached, however, need not answer

9       any question put to him; indeed, he may decline to listen to the questions at all and

10      may go on his way. (Citation omitted).

11

12 Id. at 497-98 (citations omitted).

13       Finally, the Ninth Circuit decided this issue in Benitez-Mendez v. Immigration and

14 Naturalization Service, 752 F.2d 1309, 1310 (9th Cir. 1984), in which a Border Patrol officer

15 approached and questioned a worker in a field after a number of other workers had fled upon

16 seeing the Border Patrol. The Ninth Circuit found that no seizure had taken place in regard to

17 the initial questioning of the individual by the Border Patrol. The Court stated that "[f]rom the

18 record, it does not appear that the Border Patrol officer's initial encounter with petitioner

19 amounted to a seizure under the Anderson test. The officer approached the petitioner in an open

20 field and asked him several questions to which he responded voluntarily. There is no evidence

21 of the use of physical force, a display of a weapon, or the threatening presence of several

22 officers." Id. at 1311.

23       Detaining a person for routine border questioning is not custodial. United States v.

24 Troise, 796 F.2d 310, 314 (9th Cir. 1986); see also United States v. Galindo-Gallegos, 244 F.3d

25 728, 731 (9th Cir.), modified by 255 F.3d 1154 (9th Cir. 2001) (Ninth Circuit upheld Judge

26 Gonzalez's denial of a defendant's motion to suppress his field statements).  This case is

27 analogous to Royer, Benitez-Mendez, and Galindo-Gallegos.  In this case, the defendant was

28

1    attempting to exit the United States and enter Mexico at a port of entry, and was thus subject to

2    routine border questioning.

3        Moreover, defendant's field admissions were made during a brief investigatory stop.

4    See, e.g., United States v. Brignoni-Ponce, 422 U.S. 873, 878-89 (1975) (noting that it is well

5    established that law enforcement may make a brief investigatory stop and ask questions about

6    citizenship and immigration status); United States v. Woods, 720 F.2d 1022, 1029 (9th Cir.

7    1983) (holding that persons subjected to brief investigatory detentions are not entitled to

8    Miranda warnings). Defendant answered those questions voluntarily. The record is devoid of

9    any suggestion that the agents physically restrained Defendant or restricted his liberty in any

10    meaningful way. Further, the fact that officers were armed or displayed badges does not turn a

11    consensual encounter into a custodial situation. See United States v. Drayton, 536 U.S. 194,

12    204-205 (2002). During this questioning, Defendant was not placed in handcuffs or searched.

13    There is simply nothing to suggest that Defendant was in custody during the questioning in

14    primary and secondary inspection.  For all of the foregoing reasons, the Court should deny

15    Defendant's motion to suppress all statements.

16        **3.    Defendant's Post Miranda Statement were Voluntary**

17        A statement made in response to custodial interrogation is admissible under Miranda v.

18    Arizona, 384 U.S. 437 (1966), and 18 U.S.C. § 3501 if a preponderance of the evidence shows

19    that the statement was made after an advisement of Miranda rights, and that the statement was

20    not elicited by improper coercion.  See Colorado v. Connelly, 479 U.S. 157, 167-70 (1986)

21    (preponderance of evidence standard governs voluntariness and Miranda determinations; valid

22    waiver of Miranda rights should not be found in the "absence of police overreaching").

23        A valid Miranda waiver depends on the totality of the circumstances, including  the

24    background, experience, and conduct of the  defendant.  North Carolina v. Butler, 441 U.S.

25    369, 374-75 (1979).   To be knowing and intelligent, "the waiver must have been made with a

26    full awareness of both the nature of the right being abandoned and the consequences of the

27    decision to abandon it."  Moran v. Burbine, 475 U.S. 412, 421 (1986). The government bears

28    the burden of establishing the existence of  a valid Miranda waiver.  North Carolina v. Butler,

1    441 U.S. at 373.  In assessing the validity of a defendant's <u>Miranda</u> waiver, the court should

2    analyze the totality of the circumstances surrounding the interrogation.  <u>See</u> <u>Moran v. Burbine</u>,

3    475 U.S. at 421.   Factors commonly considered include: (1) the defendant's age (<u>see</u> <u>United</u>

4    <u>States v. Doe</u>, 155 F.3d 1070, 1074-75 (9th Cir. 1998) (<u>en</u> <u>banc</u>)) (valid waiver because the 17-

5    year old defendant did not have trouble understanding questions, gave coherent answers, and

6    did not ask officers to notify parents); (2) the defendant's familiarity with the criminal justice

7    system (<u>see</u> <u>United States v. Williams</u>, 291 F.3d 1180, 1190 (9th Cir. 2002)) (waiver valid in

8    part because defendant was familiar with the criminal justice system from past encounters); (3)

9    the explicitness of the <u>Miranda</u> waiver (<u>see</u> <u>United States v. Bernard S.</u>, 795 F.2d 749, 753 n.4

10   (9th Cir. 1986) (a written <u>Miranda</u> waiver is "strong evidence that the waiver is valid"); <u>United</u>

11   <u>States v. Amano</u>, 229 F.3d 801, 805 (9th Cir. 2000) (waiver valid where <u>Miranda</u> rights were

12   read to defendant twice and defendant signed a written waiver)); and (4) the time lapse between

13   the reading of the <u>Miranda</u> warnings and the interrogation or confession (<u>see</u> <u>Guam v. Dela</u>

14   <u>Pena</u>, 72 F.3d 767, 769-70 (9th Cir. 1995)) (valid waiver despite 15-hour delay between

15   <u>Miranda</u> warnings and interview).

16        In this case, Defendant's post-arrest confessions should not be suppressed because they

17   were preceded by a knowing, voluntary, and intelligent <u>Miranda</u> waiver.  Agents advised

18   Defendant of his <u>Miranda</u> rights in Spanish.  Defendant knowingly waived his <u>Miranda</u> rights

19   and agreed to answer questions without the presence of an attorney.  Defendant is familiar with

20   the criminal justice system as a result of his prior arrests and convictions.  He verbally stated

21   that he understood his rights and was willing to be interviewed without an attorney present and

22   he signed a waiver of rights expressing her decision to speak with agents.  Defendant's post-

23   <u>Miranda</u> interview immediately followed his waiver of rights. This entire exchange was

24   videotaped, and a copy of that videotape has been provided to the defendant.  Moreover, there

25   is no allegation or evidence of any physical or psychological coercion by any Government

26   agents.  Based on the totality of the circumstances, Defendant's statements were the product of

27   a knowing, intelligent, voluntary waiver of his <u>Miranda</u> rights and therefore should not be

28   suppressed.

1

## VI

2

## MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS

3      The Government does not object to the granting of leave to file further motions as long

4   as the further motions are based on newly discovered evidence or discovery provided by the

5   Government subsequent to the instant motion at issue.

6

7

## VII

8

## CONCLUSION

9      For the foregoing reasons, the Government requests that the Court deny Defendant's

10   motions, except where unopposed.

11

        DATED: August 18, 2008

12

                                            Respectfully submitted,

13
                                            KAREN P. HEWITT
14                                          United States Attorney

15                                          /s/ *Caroline P. Han*
                                            CAROLINE P. HAN
16                                          Assistant United States Attorney
                                            Attorneys for Plaintiff
17                                          United States of America

18

19

20

21

22

23

24

25

26

27

28

1

UNITED STATES DISTRICT COURT

2

SOUTHERN DISTRICT OF CALIFORNIA

3

UNITED STATES OF AMERICA,    )  Criminal Case No. 08CR2428-JAH

4

    )
                Plaintiff,   )

5

    )  CERTIFICATE OF SERVICE
            v.            )

6

    )
VICENTE MANUEL AGUIRRE,    )

7

               Defendant.  )
    )

8

    )

9

IT IS HEREBY CERTIFIED THAT:

10

     I, Caroline P. Han, am a citizen of the United States and am at least eighteen years of

11

age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

12

     I am not a party to the above-entitled action.  I have caused service of **RESPONSE AND OPPOSITION TO THE DEFENDANT'S MOTIONS TO SUPPRESS**

13

**STATEMENTS, SUPPRESS VEHICLE STOP, FOR SEARCH AND DISCLOSURE OF ELECTRONIC SURVEILLANCE, COMPEL SPECIFIC DISCOVERY, AND FOR**

14

**LEAVE TO FILE MOTIONS** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them:

15

Philip DeMassa

16

*Attorney for the defendant*

17

     I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

18

None

19

the last known address, at which place there is delivery service of mail from the United States

20

Postal Service.

21

     I declare under penalty of perjury that the foregoing is true and correct.

22

     Executed on August 18, 2008.

23

/s/ *Caroline P. Han*

24

_____
CAROLINE P. HAN

25

26

27

28